UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **DARLENE CHRISMAN** *on behalf of* **NRC,** | ) ) ) |
| **Plaintiff,** | ) ) ) |
| v. | ) )   CAUSE NO. 1:23-cv-00046-SLC ) |
| **COMMISSIONER OF SOCIAL SECURITY,** *sued as Martin O'Malley, Commissioner of Social Security Administration,*[1] | ) ) ) ) ) |
| **Defendant.** | ) ) |

## OPINION AND ORDER

Plaintiff Darlene Chrisman on behalf of NRC, a minor, appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI") for NRC. (ECF 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

### I. FACTUAL AND PROCEDURAL HISTORY

Chrisman applied for SSI on NRC's behalf in March 2021, alleging disability as of January 1, 2020. (ECF 13 Administrative Record ("AR") 32, 198-208).[2] The claim was denied initially and upon reconsideration. (AR 83-94). In April 2022, administrative law judge ("ALJ") Genevieve Adamo conducted an administrative hearing, at which Chrisman, who was

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for Kilolo Kijakazi in this case. *See Melissa R. v. O'Malley*, No. 1:22-cv-02404-TAB-TWP, 2023 WL 8866397, at *1 n.1 (S.D. Ind. Dec. 22, 2023).

[2] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

represented by counsel, testified. (AR 47-82). On June 14, 2022, the ALJ rendered an unfavorable decision to Chrisman, concluding that NRC was not disabled because she did not have either "marked" limitations in two domains of childhood functioning or an "extreme" limitation in one domain of childhood functioning. (AR 32-41). The Appeals Council denied Chrisman's request for review (AR 5-10), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On February 1, 2023, Chrisman filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). In her opening brief, Chrisman argues that: (1) the ALJ erred by failing to build a logical bridge from the evidence to her conclusion, (2) the ALJ erred by finding a questionnaire completed by NRC's Pre-K teacher, Denise Easley, in May 2021, just "partially persuasive," (3) and the Appeals Council erred by failing to exercise jurisdiction over the case based on a questionnaire completed by NRC's teacher, Amanda Capps, in July 2022, which was after the ALJ issued her decision. (ECF 16 at 5; *see* AR 6, 19-25, 230-37).

NRC was four years old when the application was filed in March 2021 and five years old when the ALJ issued her decision. (AR 33, 41). Chrisman represents that NRC suffers from the following medical conditions: attention deficit hyperactivity disorder (ADHD), reactive attachment disorder, separation anxiety disorder, dissociative engagement disorder, chronic constipation, encopresis, and "withholding." (ECF 16 at 5).[3]

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and

---

[3] Encopresis, "sometimes called fecal incontinence or soiling, is the repeated passing of stool (usually involuntarily) into clothing." Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/encopresis/symptoms-causes/syc-20354494 (last visited Mar. 27, 2024).

transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation and quotation marks omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant under the age of eighteen must establish that she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C). A

3

physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner evaluates disability claims for children pursuant to a three-step evaluation process, requiring consideration of the following issues, in sequence: "(1) is the child engaged in substantial gainful activity? (2) does the child have a medically determinable impairment that is severe? and, (3) do these impairments meet, medically equal, or . . . functionally equal one of a list of severe impairments set forth in the Listings [20 C.F.R. Part 416, Subpart P, Appendix 1]?" *Edwards ex rel. L.T. v. Colvin*, No. 12 C 7539, 2013 WL 3934228, at *1 (N.D. Ill. July 30, 2013) (citing 20 C.F.R. §§ 416.924(b)-(d)); *see also Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003); *Mara S. ex rel. C.S. v. Kijakazi*, No. 19-cv-8015, 2022 WL 4329033, at *1 (N.D. Ill. Sept. 19, 2022). An affirmative answer at step one, or a negative answer at steps two or three, ends the inquiry and leads to a determination that the child is not disabled. *See Mara S. ex rel. C.S.*, 2022 WL 4329033, at *1; *Edwards ex rel. L.T.*, 2013 WL 3934228, at *1.

The question of whether the child's impairment "functionally equals" a listing is unique to child disability claims. *Edwards ex rel. L.T.*, 2013 WL 3934228, at *1. To find that an impairment functionally equals a listing, the ALJ must consider the impairment's severity in six age-appropriate domains: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." *Mara S. ex rel. C.S.*, 2022 WL 4329033, at *1; *see* 20 C.F.R. § 416.926a(b). If the ALJ finds a "marked" limitation in at least

4

two of the domains or an "extreme" limitation in one domain, the child functionally equals a listing. *Mara S. ex rel. C.S.*, 2022 WL 4329033, at *1; *see* 20 C.F.R. § 416.926a(d). A marked limitation in a domain means the child's impairment(s) "interfere[(s)] seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation is "more than moderate" but "less than extreme." *Id.* An extreme limitation in a domain means the child's impairment(s) "interfere[(s)] very seriously with [her] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). An extreme limitation is "more than marked" and represents the rating given "to the worst limitations." *Id.*

The burden of proof lies with the applicant at each step of the process. *R.J. ex rel. Taylor v. Colvin*, No. 1:11-cv-01001-SEB-DKL, 2014 WL 1328166, at *2 (S.D. Ind. Mar. 28, 2014). "If a child's impairments pass all three steps, and satisfies the duration requirement, then she is determined to be disabled." *Id.*

## B. The Commissioner's Final Decision

In the ALJ's June 14, 2022, decision, which became the final decision of the Commissioner, the ALJ noted at the outset that NRC was "an older infant/toddler" both when the application was filed on March 14, 2017, and on the date the ALJ issued her decision. (AR 33). At step one of the three-step analysis, the ALJ found that NRC had not engaged in substantial gainful activity since the application date. (*Id.*). At step two, the ALJ found that NRC had the following severe impairments: ADHD, reactive attachment disorder, separation anxiety of childhood, constipation, encopresis, anxiety, and a personality disorder. (*Id.*). At step three, the ALJ concluded that NRC did not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of a listing under 20 C.F.R. Part 416,

5

Subpart P, Appendix 1. (*Id.* at 33-41). Therefore, the application for SSI was denied. (AR 41).

### C. Cherry-Picking and Building a Logical Bridge

Chrisman first argues that the ALJ cherry-picked the record and failed to build a logical bridge from the evidence to her conclusion at step three that NRC did not functionally equal a listing. (ECF 16 at 8-18). For the following reasons, Chrisman's first argument fails to warrant a remand.

"[A]n ALJ must provide a logical bridge between the evidence and her conclusions." *Jarnutowski v. Kijakazi*, 48 F. 4th 769, 773 (7th Cir. 2022) (citation, brackets, and internal quotation marks omitted). That is, while the ALJ "need not address every piece of evidence," she "must build an accurate and logical bridge from the evidence to [her] conclusion and articulate some legitimate reason for [her] decision." *Hightshoe v. Kijakazi*, No. 22-2359, 2023 WL 3531473, at *1 (7th Cir. May 18, 2023) (citation and internal quotation marks omitted), *aff'd*, *cert. denied*, – S. Ct. – (2024); *see also Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). In doing so, "the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (collecting cases); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." (citation omitted)). Rather, "[t]he ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore*, 743 F.3d at 1123 (citation omitted); *see Murphy v. Colvin*, 759 F.3d 811, 817-18 (7th Cir. 2014) (explaining that while an ALJ's decision "need not contain a complete written evaluation of every piece of evidence," it at

6

the same time "may not dismiss a line of evidence contrary to the ruling" (citations omitted)).

Here, Chrisman contends that the ALJ erred by "review[ing] the evidence in the record, through rose colored glasses, pointing out the positives and ignoring or watering down the negatives." (ECF 16 at 14). Stated another way, Chrisman contends that the ALJ ignored evidence of record unfavorable to her finding of non-disability—namely, select portions of evidence from the Bowen Center, NRC's "skills coach," Ms. Easley's questionnaire, and Chrisman's hearing testimony. (*Id.* at 8-18).[4]

In her decision, the ALJ discussed the various "buckets" of evidence in the record. First, the ALJ summarized Chrisman's hearing testimony as follows:

> The claimant's guardian, Darlene Chrisman, testified that the claimant has no problems with her hearing, sight, or speech. However, the claimant "makes noises" for some things, rather than speaking. But, she can make a sentence of more than 4 words. She can have a conversation and ask for what she wants. However, focus and concentration are an issue for the claimant. She can read the letters of the alphabet. She can throw and catch a ball and ride a tricycle. She enjoys being with children her own age. She likes to share her toys. She can use a fork and spoon by herself. She can dress herself. She has problems defecating appropriately. Furthermore, the grandmother stated that the claimant's medications are helping.

(AR 37). Having reviewed the transcript of the hearing (AR 47-82), the ALJ's summation is an accurate reflection of Chrisman's testimony, though with a few omissions. Chrisman also testified that NRC had problems with urinating appropriately in that she was "urinating on the floor and things like that." (AR 62; *see also* AR 64, 71-72 ("Anything tactilely comfortable or soft, blankets, clothing, she urinates, defecates, or uses them to wipe on . . . .")). Additionally,

---

[4] Given that the skills coach's notes are written on Bowen letterhead, the skills coach apparently is an employee of, or affiliated with, the Bowen Center. (*See, e.g.*, AR 336).
    To the extent Chrisman suggests that the ALJ also ignored Ms. Capps's questionnaire (ECF 16 at 19), that assertion merits no attention given that Ms. Capps's questionnaire was completed one month after the ALJ issued her decision and thus was not before the ALJ (AR 25, 41).

7

Chrisman testified that NRC was "blatantly defiant, uncooperative, willfully just making bad choices" (AR 64); would hoard food (AR 73-75); had sporadic sleep habits (AR 76-77, 80-81); and sometimes had a "meltdown . . . when she doesn't get her way" (AR 78).

The ALJ next summarized the medical evidence of record in two pages, including a September 2020 well child check-up; a Bowen Center initial assessment in October 2020; a consultative speech and language evaluation by Kristen Longfellow, MA, CCC-SLP, in July 2021; and therapy notes from NRC's skills coach along with other medical records dated from January 2021 to March 2022. (AR 37-40). Having reviewed these records, the Court finds that the ALJ's summary of that evidence, as follows, is even handed:

> In sum, . . . . the claimant's cognition was within normal limits, her intelligence was estimated to be average, and her teacher said she was doing great with abilities in the classroom (Exhibit 10F); she had average articulation and language and occasionally made sound errors (Exhibit 5F); she at times did well listening and following directions but had to be redirected (Exhibit 10F); she displayed average eye contact and was cooperative; one time, she hit and kicked her teacher and tackled a peer; she needed redirection at times when interacting with peers; she struggled with respecting personal space (Exhibit 10F); she presented as very shy but eventually warmed up (Exhibit 12F); she displayed separation anxiety (Exhibit 10F); she presented as introverted with minimal eye contact at an evaluation (Exhibit 5F); she was active and growing well (Exhibit 9F); she displayed age-appropriate ambulation, galloping hops in the hallway, and functional dynamic balance; she completed supine to sitting on the mat table and was able to complete bridging with ease (Exhibit 12F); her behaviors improved; she was still having outbursts and tantrums on occasion; she had sleeping problems; she acted out when tired (Exhibit 10F); her chronic constipation, encopresis, and withholding seemed to have a significant behavioral component, and she had regressed from being fully potty trained (Exhibits 9F, 12F); and she was doing well with less accidents (Exhibit 12F).

(AR 39-40).

The ALJ also accurately summarized the speech and language evaluation completed by Ms. Longfellow in July 2021, which reflected average language skills and no concerns with NRC's

hearing, voice, fluency, or oral motor abilities. (AR 40, 442). The ALJ found Ms. Longfellow's evaluation "persuasive, as . . . consistent with the medical record as a whole." (AR 40).

Next the ALJ considered the questionnaire completed by Ms. Easley, NRC's Pre-K teacher, in May 2021. (AR 40, 230-37). As the ALJ summarized, Ms. Easley reported that in comparison to other same-aged children, NRC had "serious" problems in paying attention when spoken to, sustaining attention during play/sports activities, carrying out single-step instructions, working at a reasonable pace/finishing on time, playing cooperatively, making and keeping friends, following rules, handling frustration appropriately, and being patient when necessary. (AR 40, 232-35). Ms. Easley further reported that NRC had "very serious" problems in carrying out multi-step instructions, waiting to take turns, changing activities without being disruptive, working without distracting self or others, seeking attention appropriately, and respecting/obeying adults in authority. (*Id.*). Ms. Easley wrote that NRC required frequent redirection to stay on task, at times must be removed from the classroom due to unsafe behavior, and often acts inappropriately in situations revolving around personal control regulation. (AR 232-33). Ultimately, the ALJ found Ms. Easley's opinion just "partially persuasive," explaining that the opinion was "somewhat consistent with the medical record as a whole" and that NRC "was showing improvement with a skills coach." (AR 40).

The ALJ also reviewed the opinions of the state agency psychologists, Amy S. Johnson, Ph.D., issued in June 2021, Ann Lovko, Ph.D., issued in July 2021, and Kari Kennedy, Psy.D., issued in October 2021, who reviewed the record and concluded that NRC did not functionally equal any listing. (AR 40-41; *see* AR 83, 86-88, 92-93). More specifically, these doctors opined that NRC had "No Limitation" in the domains of acquiring and using information, moving about

9

and manipulating objects, and health and physical well-being; and "Less Than Marked" limitations in the domains of attending and completing tasks, interacting and relating with others, and caring for self. (AR 86-87, 92-93). The ALJ found these opinions "persuasive, as . . . consistent with the medical record as a whole." (AR 41).

In contesting the ALJ's conclusion, Chrisman points to various pieces of evidence she believes are contrary to the ALJ's conclusion, asserting that the ALJ failed to fairly consider the record and discuss these bits of evidence. (ECF 16 at 14-18). As already explained, "although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted). "The ALJ must evaluate the record fairly." *Id.* As such, the Court is tasked with determining whether the ALJ ignored significant evidence contrary to her finding of non-disability.

In sum, Chrisman points to various evidence of record that she contends the ALJ ignored when summarizing the evidence of record, including:

- a June 30, 2021, skills coach note that NRC was "touching herself inappropriately" at school and "had her hands in between a classmate[']s legs" (AR 548);

- a June 28, 2021, skills coach note that Chrisman said NRC had been "urinating on the floor," "flushing her underwear down the toilet," "having fits where she cries, screams, kicks, and breaks things," and was "going back to baby talk and acting like [an] animal" (AR 550);

- a July 14, 2021, skills coach note that NRC "had accidents and actually rubbed her poop on grandma's bed" (AR 531);

- a July 21, 2021, skills coach note that "since [her] last session," there was "[n]o progress at all" and that NRC was not listening to the skills coach or her teachers (AR 522);

- Ms. Easley's statement in the May 2021 questionnaire that NRC had been "remov[ed] from classroom [in] several instances" for displaying behavior "that is unsafe for her or

10

those around her" (AR 233);

- a January 4, 2021, Bowen Center initial assessment stating that NRC was "displaying violent/destructive behaviors such as choking herself with the pull cord on blinds . . . , making gun/shooting gestures at grandma and making threats," and that she "was exceptionally defiant" and "shouted and screamed constantly" (AR 402-03);

- that the skills coach often noted that NRC made minimal or no progress toward goals since the previous session (AR 332, 336, 338, 340, 342, 344, 368, 372, 380, 400, 471, 481);

- that NRC is described in the record as "taking things from classmates," "ignoring directions," "being defiant," and requiring "frequent," "consistent," or "constant" redirection" (AR 336, 338, 340, 342, 344, 382, 471, 490); and

- a March 7, 2022, Bowen Center note documenting Chrisman's and the skills coach's report that NRC's symptoms relating to her mood are "moderate," "chronic," and "unstable"; that she has "possible intrusive thoughts" and "[v]ery severe separation anxiety even though slightly better from before"; that she "would defecate and urinate in the house intentionally" and then "lie[] when she does these behaviors"; that her encopresis came back, and that "she talks to monsters and they tell her to do bad things" (AR 611).

(*See* ECF 16 at 14-18; *see also id.* at 9-14). As Chrisman sees it, a remand is necessary to consider this evidence because "the ALJ fails to explain and build a logical bridge from how a child that urinates and defecates on herself and her surroundings on purpose, has self-harming behaviors, and believes she has a monster that tells her to do things, has a 'less than a marked' ability to care for herself." (*Id.* at 17-18).

Contrary to Chrisman's assertion, the ALJ did expressly consider much of this evidence. The ALJ noted Chrisman's testimony that NRC had "problems defecating appropriately" (AR 37; *see also* AR 35 ("the claimant has issues with potty training"); AR 40 ("her chronic constipation, encopresis, and withholding seemed to have a significant behavioral component, and she had regressed from being fully potty trained")); the Bowen Center's intake evaluation documenting that NRC had "difficulty coping with [her] emotions . . . and . . . will throw

11

tantrums and bite herself" (AR 38; *see* AR 40 ("was still having outbursts and tantrums on occasion")); the Bowen Center's March 2022 note stating that NRC displayed "separation anxiety" (AR 39); Ms. Longfellow's evaluation reporting Chrisman's concern that NRC used "baby talk" and made "noises similar to animals instead of communicating appropriately" (*id.*); and Ms. Easley's questionnaire that NRC "struggles to stay on task to complete work or simple directions" (AR 35). In fact, the ALJ expressly listed almost all of the behavioral categories in which Ms. Easley rated NRC as having "serious" or "very serious" problems. (AR 40).[5]

The ALJ also considered the skills coach's notes that NRC was "defiant" and "tended to just take things from classmates" (AR 38); that "she acted out when tired" (AR 40); that "[t]he teacher had to reinforce appropriate boundaries with the claimant" as to personal space (AR 38; *see also* AR 39 ("she struggled with respecting personal space")); that NRC's "attention had to be redirected" throughout the school day (AR 38; *see also* AR 39 ("she at times did well listening . . . but had to be redirected")); that NRC "reported having 'a monster'" that "tells [her] to do things . . . . [like] poop on [her]self" (AR 38); and that one time NRC "hit and kicked her teacher and tackled a peer" (AR 39). Having reviewed the ALJ's decision and Chrisman's recitation of evidence, the Court concludes that the ALJ did not "ignore an entire line of evidence that is contrary to the ruling." *Golembiewski*, 322 F.3d at 917 (citation omitted).

Furthermore, in making this argument, Chrisman relies on her own (or more likely, her attorney's) lay definition of a "marked" limitation in the relevant domains, failing to support her argument with medical opinion evidence. (*See* ECF 16 at 17-18 ("[T]he ALJ fails to explain . . . how a child that urinates and defecates on herself and her surroundings on purpose, has self-

---

[5] The only category the ALJ omitted was Ms. Easley's statement that NRC had a "serious" problem in expressing anger appropriately. (AR 233).

12

harming behaviors, and believes she has a monster that tells her to do things, has a 'less than a marked' ability to care for herself.")). "[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citing 20 C.F.R. § 416.912(c)). That is, "[i]t is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [her] claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). Here, Chrisman fails to carry her burden of producing medical evidence assigning her a "marked" or "extreme" limitation in any domain.

In contrast, the ALJ's decision is supported by the medical source opinions of Dr. Johnson, Dr. Lovko, and Dr. Kennedy, the reviewing state agency psychologists of record who reviewed all the evidence of record, respectively, in June, July, and October, 2021, and concluded that NRC did not functionally equal a listing. (AR 86-87, 92-93). Specifically, these doctors reviewed the evidence to which Chrisman points—that is, the skills coach's notes, Ms. Easley's questionnaire, and the Bowen Center's initial assessment—as well as the rest of the evidence of record at the time, yet concluded that NRC's various problems were not severe enough to functionally equal a listing. (AR 81- 94). Chrisman offers no medical source opinion countering this conclusion. *See Gedatus*, 994 F.3d at 902-03 (stating that the ALJ could rely on the opinions of the state agency doctors, given that the claimant did not offer any opinion from her doctors that her medical impairment disabled her); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (same). "The fact that [the state agency psychologists] reviewed the entire record strengthens the weight of their conclusions." *Flener ex rel. Flener*, 361 F.3d at 448 ("It is appropriate for an ALJ

13

to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation."); *see Thomas S. v. Kijakazi*, No. 1:22 cv 270, 2023 WL 2783196, at *5 (N.D. Ind. Apr. 5, 2023) (noting that the state agency doctors' review of the longitudinal record "strengthens the weight of their conclusions"); *see generally Becky C. v. Kijakazi*, No. 1:22 cv 24, 2023 WL 195830, at *4 (N.D. Ind. Jan. 17, 2023) ("By making an RFC assessment consistent with the expert reviewing physicians' findings, the ALJ accounted for any limitations indicated by the [evidence at issue.]").

As to creating a logical bridge, the ALJ could have elaborated more when articulating that Ms. Easley's questionnaire was just "partially persuasive." (AR 40). Nevertheless, the ALJ still minimally articulated her reasoning for doing so by explaining that: (1) Ms. Easley's ratings were just "somewhat consistent with the medical record as a whole"; and (2) NRC "was showing improvement with a skills coach." (*Id.*). Given the improvement in NRC's more recent records that the ALJ noted (*see* AR 39), the ALJ's reasoning is adequately supported. *See Frain v. Comm'r of Soc. Sec.*, No. 1:13-CV-177 PS, 2014 WL 6750044, at *5 (N.D. Ind. Nov.. 26, 2014) (affirming the ALJ's decision where the claimant began receiving regular treatment at the Bowen Center and showed steady improvement through medications and therapy); *Z.K.S.P. v. Colvin*, No. 1:15-cv-1831-DKL-TWP, 2016 WL 4708589, at *3 (S.D. Ind. Sept. 9, 2016) (affirming the ALJ's decision where the ALJ found that the child's symptoms improved while she was taking medication); *see generally Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) ("[W]e must allow [an ALJ's] decision to stand so long as the ALJ minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." (citation, brackets, and internal quotation marks omitted)).

Likewise, the ALJ found the opinions of Dr. Johnson, Dr. Lovko, and Dr. Kennedy "persuasive" for the reason that they were "consistent with the medical record as a whole." (AR 41).[6] Again, the ALJ could have said more here, but given her thorough review of the medical evidence and the lack of other conflicting medical source opinions of record, the ALJ did enough in this instance to meet the "lax" minimal articulation standard. *See Elder*, 529 F.3d at 415. "[T]idy packaging" is not required in ALJs' decisions because the courts read them "as a whole and with common sense." *Buckhanon ex rel. J.H. v. Astrue,* 368 F. App'x 674, 678-79 (7th Cir. 2010) (citations omitted); *see generally Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) ("If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough.").

Ultimately, Chrisman's first argument seems more of a plea that the Court reweigh the evidence of record in the hope that it will come out in her favor this time. The Court will not do so. *See L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) ("[W]e will not reweigh the evidence or substitute our judgment for that of the ALJ." (citation omitted)). Therefore, finding Chrisman's first argument unpersuasive, the Court will move on to her second proposed grounds for remand.

### D. Ms. Easley's Questionnaire

Chrisman next argues that the ALJ erred when finding Ms. Easley's May 2021 questionnaire reflecting "serious" problems in several domains just "partially persuasive." (ECF 16 at 18-20; *see* AR 230-37). Chrisman asserts that "the ALJ did not explain why [Ms. Easley's] findings were insufficient to find a marked limitation in attending and completing tasks," and

---

[6] Indeed, the Bowen Center's March 2022 note reflected "moderate" symptoms, not marked. (AR 611, 613).

furthermore, that the questionnaire deserved more weight because it was consistent with Chrisman's testimony, Ms. Capps's questionnaire, and the records of the skills coach and the Bowen Center. (ECF 16 at 18-19).[7] Chrisman also contends that "it is unclear what evidence the ALJ relied upon in finding that [NRC] was not markedly limited in this domain." (*Id.* at 18).

The ALJ penned a lengthy paragraph on Ms. Easley's questionnaire, noting all of the various subcategories in which Ms. Easley represented that NRC had serious or very serious problems. (AR 40). At the close of this paragraph, though, the ALJ explained that she considered Ms. Easley's questionnaire just "partially persuasive" because it was "somewhat consistent with the medical record as a whole" and NRC "was showing improvement with a skills coach." (*Id.*). Chrisman claims the ALJ's proffered reasoning falls below the required minimal-articulation standard. However, as stated *supra*, while the ALJ could have elaborated as to Ms. Easley's questionnaire, the ALJ nevertheless offered enough to satisfy the "lax" minimal articulation standard. *Elder*, 529 F.3d at 415.

Furthermore, Ms. Easley's questionnaire is not so consistent with other evidence of record as Chrisman suggests. While Chrisman represents in her brief that "the most recent record from the skills coach and the Bowen Center state that NRC's symptoms are 'chronic,' 'unstable,' and 'very severe'" (ECF 16 at 19-20), that is not actually so. The Bowen Center's March 2022 note, rather, reflects Chrisman's description of NRC's symptoms as "chronic," "unstable," and "*moderate*," and the therapist's description of "[v]ery severe *separation anxiety even though slightly better from before*." (AR 611 (emphasis added)). Furthermore, after completing a mental

---

[7] While Chrisman argues that Ms. Easley's questionnaire is consistent with Ms. Capps's questionnaire, that argument is a nonstarter. (ECF 16 at 19). As stated *supra*, Ms. Capps's questionnaire was completed one month *after* the ALJ ALJ issued her decision, and thus, Ms. Capps's questionnaire was not before the ALJ.

status examination, the Bowen Center provider assessed NRC's diagnoses as: ADHD combined type, chronic, "*Moderate*" severity; reactive attachment disorder of childhood, chronic, "*Moderate*" severity; and separation anxiety disorder of childhood, chronic, "*Moderate*" severity. (AR 613 (emphasis added)).

And as to Chrisman's argument that "it is unclear what evidence the ALJ relied upon in finding that [NRC] was not markedly limited in [the domains of attending and completing tasks, relating and interacting with others, and ability to care for herself]" (ECF 16 at 18; *see id.* at 20), that argument is groundless. As explained *supra*, the ALJ made quite clear in her decision that she relied on the opinions of Dr. Johnson, Dr. Lovko, and Dr. Kennedy, who all found that NRC had "Less Than Marked" limitations in the domain of "attending and completing tasks," "interacting and relating with others," and "caring for [her]self." (AR 86, 92-93; *see* AR 40-41). As such, Chrisman's arguments challenging the ALJ's consideration of Ms. Easley's May 2021 questionnaire are unavailing.

*E. Ms. Capps's Questionnaire*

In her final argument, Chrisman argues that the Appeals Council erred when finding that Ms. Capps's July 2022 questionnaire—completed after the ALJ issued her decision—did not "show a reasonable probability that it would change the outcome of the decision." (ECF 16 at 20 (quoting AR 6); *see* AR 19-28). That argument, too, fails to necessitate a remand.

The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5). "The [Appeals] Council has discretion whether to hear an appeal

17

from an [ALJ's] decision." *Keys*, 347 F.3d at 992 (collecting cases). "District courts within [this] Circuit have reached differing opinions over whether review is available . . . when the Appeals Council uses [the "does not show a reasonable probability that it would change the outcome of the decision"] language in a denial order." *Davis v. Comm'r of Soc. Sec.*, No. 3:20-CV-303 JD, 2021 WL 2451908, at *4 (N.D. Ind. June 16, 2021) (citations omitted) (explaining that the question is whether the Appeals Council's use of this language "is a legal determination of materiality" and subject to *de novo* review, or a "discretionary weighing of the evidence," which is "unreviewable").

Ultimately, the Court need not reach the determination of whether *de novo* review is available here because even presuming it is, Ms. Capps's questionnaire would not change the outcome of the ALJ's decision. In the questionnaire, Ms. Capps wrote that NRC had just "slight" problems in the domain of acquiring and using information; "obvious" problems (defined as more than "slight" but less than "serious") in the domain of attending and completing tasks, but "serious" problems in waiting to take turns and in changing from one activity to another without being disruptive; "slight" to "obvious" problems in the domain of interacting and relating with others, but a "serious" problem in expressing anger appropriately; no or "slight" problems in the domain of moving about and manipulating objects; some "obvious" problems in the domain of caring for herself, but "serious" problems in responding appropriately to changes in own mood and using appropriate coping skills to meet daily demands of the school environment. (AR 19-23). Ms. Capps further wrote that NRC is a "very smart child" who "picks up new material/lessons quickly, but tends to get bored easily and becomes disruptive"; that classroom disruptions "send[] her into a tailspin"; that she becomes "angry" and "aggressive" when asked

to do something she does not want to do, like cleaning up or changing activities; that she at times has been "removed from the classroom, and sent home from daycare"; and that she uses "'bad' behavior to rec[ei]ve attention." (AR 19-21). Ms. Capps also stated that NRC's medication has resulted in "significant improvement" in her behavior, and that without the medication she was unable to "appropriately assert her emotional needs or use appropriate coping skills." (AR 23).

As such, the information provided by Ms. Capps was not different in kind from other information previously provided of record, including Ms. Easley's questionnaire. Furthermore, as the Commissioner observes, "[o]n the whole, Ms. Capps's ratings for [NRC's] functioning indicated *less* severity than that of Ms. Easley." (ECF 21 at 20 (emphasis added) (citation omitted)). If anything, then, Ms. Capps's questionnaire *bolsters* the ALJ's observation that NRC improved with medication and therapy (AR 37, 39-40) and the ALJ's finding that NRC did not have a "marked" or "extreme" finding in any childhood domain (AR 36-37, 41). Consequently, the Appeals Council did not err when finding Ms. Capps's questionnaire "[did] not show a reasonable probability that it would change the outcome of the decision" and declining to exercise jurisdiction over the case. (AR 6).

In sum, none of Chrisman's three arguments warrant a remand of this case. The ALJ's decision is supported by substantial evidence that was fairly considered, her reasoning was minimally articulated, and the Appeals Council did not err in declining to assert jurisdiction over the case based on the submission of Ms. Capps's questionnaire after the ALJ had issued her decision. Hence, the Commissioner's final decision will be affirmed.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is

DIRECTED to enter a judgment in favor of the Commissioner and against Chrisman.

SO ORDERED.

Entered this 28th day of March 2024.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge
